**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 04-5120**

─────────────

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

PATRICK JERMAINE ROBERTS,

Defendant - Appellant.

─────────────

Appeal from the United States District Court for the District of South Carolina, at Charleston. Patrick Michael Duffy, District Judge. (CR-04-295)

─────────────

Submitted: January 27, 2006       Decided: February 10, 2006

─────────────

Before KING and SHEDD, Circuit Judges, and HAMILTON, Senior Circuit Judge.

─────────────

Affirmed by unpublished per curiam opinion.

─────────────

Parks N. Small, Federal Public Defender, Columbia, South Carolina, for Appellant. Jonathan S. Gasser, Acting United States Attorney, Alston C. Badger, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, South Carolina, for Appellee.

─────────────

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Patrick Jermaine Roberts appeals his convictions and sentence in the District of South Carolina on a controlled substance offense and a firearms offense. As explained below, we affirm both his convictions and his sentence.

I.

On the evening of February 18, 2003, Officer Robert Joyner of the North Charleston Police Department was dispatched to a mobile home park, upon information that a man there was lying in the street bleeding. Joyner arrived to find Roberts, bleeding from what appeared to be a bullet wound, lying near a green Jeep Cherokee that was parked near a mobile home on Lot 218. Roberts advised Joyner that he had shot himself and thereafter had thrown the weapon from the Jeep. After arranging for Roberts to receive medical attention, Joyner searched for the weapon. During this search, he observed a trail of blood leading from where Roberts had been found to the Jeep. A second trail of blood led from the Jeep to the front steps of the mobile home on Lot 218, where Joyner discovered a large pool of blood and a set of keys.

Fearing that possible victims or injured persons could be inside the mobile home, Joyner, along with other officers who had arrived on the scene, entered the mobile home without a warrant. They then found another trail of blood leading into the master

bedroom and to the edge of the bed. The officers looked under the bed and discovered a firearm and what appeared to be a bag of marijuana. The officers thereafter obtained a search warrant and, in conducting a full warranted search of the mobile home, discovered two handguns, a rifle, thirty-six pounds of marijuana, a digital scale, and over $36,000 in cash.

On March 10, 2004, the federal grand jury indicted Roberts on three counts: (1) possession with intent to distribute marijuana, in contravention of 21 U.S.C. § 841(a)(1) ("Count One"); (2) possession of firearms in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A)(iii) ("Count Two"); and (3) being a felon in possession of firearms, in contravention of 18 U.S.C. § 922(g)(1) ("Count Three"). Count Three set forth the make, model, and general description of each of the three firearms found by the officers in searching the mobile home. On July 28, 2004, Roberts moved to suppress the evidence seized from the mobile home, asserting that the officers' initial warrantless entry contravened Roberts's Fourth Amendment rights. On August 23, 2004, the district court denied the motion. Thereafter, on September 10, 2004, Roberts pleaded guilty to Counts One and Three of the indictment, and the prosecution agreed to dismiss Count Two. Roberts's pleas were conditional, see Fed. R. Crim. P. 11(a)(2), in that he reserved the right to withdraw them

3

in the event the denial of his motion to suppress is vacated on appeal.

Roberts's presentence report ("PSR") first calculated his sentence under Chapter Two of the Guidelines, assigning him a base offense level of 26 on Count Three (which was grouped with Count One) and recommending two enhancements — one for the number of firearms involved and one for using the firearms in connection with another felony offense — which placed Roberts at offense level 32. The PSR also recommended, however, that Roberts be classified as an Armed Career Criminal under 18 U.S.C. § 924(e) and § 4B1.4 of the Guidelines. Moreover, because at least one of the firearms was described in 26 U.S.C. § 5825(a), the PSR concluded that § 4B1.4(b)(3)(A) applied, prescribing a base offense level of 34. Because the base offense level called for by § 4B1.4(b)(3)(A) exceeded the offense level prescribed by Chapter Two, the PSR concluded that § 4B1.4(b)(3)(A) governed, and that Roberts's base offense level was 34. It then recommended a three-level reduction for acceptance of responsibility, resulting in a final offense level of 31. The PSR also placed Roberts in criminal history category VI because he qualified as a career offender pursuant to § 4B1.1(b). Combining offense level 31 with criminal history category VI yielded an ultimate sentencing range of 188 to 235 months.

4

The sentencing court adopted the recommendations of the PSR and sentenced Roberts to 212 months in prison. Roberts has timely noted his appeal, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

In reviewing the denial of a suppression motion, we review a district court's factual findings for clear error and its legal conclusions de novo. See United States v. Johnson, 114 F.3d 435, 439 (4th Cir. 1997). We review a district court's interpretation of the Guidelines de novo. See United States v. Ebersole, 411 F.3d 517, 535-36 (4th Cir. 2005). And we review for plain error any claim not properly preserved and raised for the first time on appeal. See United States v. Hughes, 401 F.3d 540, 547 (4th Cir. 2005).

## III.

By this appeal, Roberts makes three contentions: (1) that the district court erred in denying his motion to suppress the evidence seized from the mobile home; (2) that the court erred in concluding that he was an Armed Career Criminal under 18 U.S.C. § 924(e); and (3) that his sentence was imposed in violation of his Sixth Amendment right to trial by jury, as explained in United States v.

Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), and its progeny.  We assess each of these contentions in turn.

## A.

Roberts first asserts that the district court erred in concluding that exigent circumstances justified the officers' initial warrantless search of the mobile home.  We disagree.  We have long recognized that "'[t]he Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid.'"  Sallie v. North Carolina, 587 F.2d 636, 641 (4th Cir. 1978) (quoting Mincey v. Arizona, 437 U.S. 385, 392 (1978)).  Here, the officers found Roberts lying in a road bleeding from a gunshot wound, they were unable to locate the weapon Roberts had allegedly shot himself with, and they discovered a trail of blood leading to the front steps of the mobile home at Lot 218.  In such circumstances, it is imminently reasonable to surmise that someone inside the mobile home was "in need of immediate aid."  The officers' warrantless search of the mobile home therefore did not contravene the Fourth Amendment.

## B.

Roberts next maintains that the district court improperly designated him as an Armed Career Offender under 18 U.S.C. §

6

924(e). Section 924(e) provides for a mandatory minimum sentence of fifteen years for any person "who violates section 922(g) . . . and has three previous convictions . . . for a violent felony or serious drug offense, or both, committed on occasions different from one another." Roberts does not dispute that his previous convictions for armed robbery and for discharging a firearm in a dwelling both constitute "violent felon[ies]" under § 924(e)(2)(B). He maintains only that the court erred in classifying his 1995 conviction for marijuana possession as a "serious drug offense" under § 924(e)(2)(A)(ii). Only those state drug offenses "for which a maximum term of imprisonment of ten years or more is prescribed by law" qualify as "serious drug offense[s]" under § 924(e)(2)(A)(ii), and, as Roberts and the Government agree, the maximum punishment authorized for his 1995 marijuana conviction was five years. Nevertheless, as the Government points out, Roberts was also convicted in 1995 on a state charge for distributing crack cocaine, an offense which carried a maximum punishment of fifteen years and thus qualifies as a "serious drug offense" under § 924(e)(2)(A)(ii). Thus, setting the 1995 marijuana offense aside, the 1995 crack distribution offense, together with the armed robbery offense and the firearm discharge offense, qualify Roberts as an Armed Career Offender under § 924(e).

Finally, Roberts maintains that the district court's enhancement of his sentence based on various judicially found facts contravened his Sixth Amendment right to trial by jury as explained in United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005). He first asserts that, under Booker, the prior convictions used to designate him as an Armed Career Criminal were required to be admitted by him or found by a jury. He concedes that this argument is foreclosed by the Supreme Court's decision in Almendarez-Torres v. United States, 523 U.S. 224 (1998), but he contends that Booker has called Almendarez-Torres into question and that we should not consider Almendarez-Torres to be controlling precedent. Whatever the merits of Roberts's contention, we are obliged to follow and apply Almendarez-Torres, until and unless the Supreme Court rules otherwise. See United States v. Cheek, 415 F.3d 349, 352-53 (4th Cir. 2005) (concluding that Almendarez-Torres remains good law after Booker).

Roberts also asserts that the sentencing enhancements for the number of firearms involved in Count Three and the use of the firearms in connection with another felony offense were based on judicially found facts that enhanced his sentence beyond that justified by the facts he admitted. As explained above, however, the sentencing court did not use those enhancements in setting Roberts's offense level. Those enhancements were used in

8

calculating Roberts's offense level under Chapter Two of the Guidelines, but Roberts's ultimate offense level was calculated under Chapter Four because the offense level calculated under § 4B1.4(b) was greater than that calculated under Chapter Two. See § 4B1.4(b) (providing, as relevant here, that offense level to be used in calculating the sentencing range is greater of offense level under Chapter Two or offense level under § 4B1.4(b)). Thus, the enhancements of which Roberts complains played no role in the computation of his sentencing range.

For its part, the Government seeks to concede that the sentencing court erred under Booker in finding that Roberts, with respect to Count Three, used the firearm in connection with a controlled substances offense, which placed Roberts in offense level 34 under § 4B1.4(b)(3)(A). We, however, need not accept the Government's concession. See United States v. Rodriguez, No. 04-4609, __ F.3d __, 2006 WL 9602, at *2 n.6 (4th Cir. Jan. 3, 2006) ("[W]e are not at liberty to vacate and remand for resentencing on the Government's concession of error alone."). A defendant can qualify for offense level 34 under § 4B1.4(b)(3)(A) in two ways: by using or possessing the firearm in connection with another crime, or "if the firearm possessed by the defendant was of a type described in 26 U.S.C. § 5845(a)." The PSR, as adopted by the court, states both that Roberts used the firearm in connection with a controlled substances offense and that the firearm was of a type

9

described in § 5845(a). Because Count Three of the indictment specifies the make, model, and general description of each firearm Roberts admittedly possessed, the court, in determining that one of the firearms was of a type described in § 5845(a), needed only make the purely legal determination of whether § 5845(a) included the firearms at issue, a legal determination that does not implicate Booker.

Because Roberts's sentence was not enhanced by judicially found facts, no Sixth Amendment error occurred here. Thus, the sentencing court's only error was in treating the Guidelines as mandatory. See United States v. White, 405 F.3d 208, 216 (4th Cir. 2005) (recognizing that "even in the absence of a Sixth Amendment violation, the imposition of a sentence under the former mandatory guidelines regime rather than under the advisory regime outlined in Booker is error"). Because Roberts did not object on the basis of Booker or its predecessors, plain error analysis applies. See United States v. Olano, 507 U.S. 725, 731 (1993). Pursuant to our decision in White, under plain error analysis, we will vacate a sentence because it was imposed under mandatory Guidelines only if "the record as a whole provides [a] nonspeculative basis for concluding that the treatment of the guidelines as mandatory affected the district court's selection of the sentence imposed." 405 F.3d at 223 (internal quotation marks omitted). Here, the record reveals no nonspeculative basis to conclude that the court

10

might have imposed a more lenient sentence under advisory Guidelines.  Indeed, the court sentenced Roberts at the middle of the applicable Guidelines range, imposing a sentence of 212 months, within the range of 188 to 235 months.  Accordingly, pursuant to <u>White</u>, we must reject Roberts's challenge to his sentence.

## IV.

Pursuant to the foregoing, the judgment of the district court is affirmed.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before us and argument would not aid in the decisional process.

<u>AFFIRMED</u>

11